983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel J. BENNETT, Defendant-Appellant.
 No. 92-1160.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Samuel J. Bennett, appeals the sentence he received following his guilty plea to one count of bank robbery in violation of 18 U.S.C. § 2113(a).
 
 I.
 
 2
 On December 6, 1990, defendant entered the National Bank of Detroit in Saginaw, Michigan. He was intoxicated and attempted to fill out some withdrawal slips even though he did not have an account at the bank. A bank teller, Kim Fisher, attempted to assist him. Defendant then grabbed his left lapel, put his right hand in his pocket and told the teller he had a gun and if she moved he was going to blow her away. He then demanded $1000.
 
 
 3
 The teller gave defendant $1000. He then ran out of the bank, collided with an automobile, and ran into a parking lot where he was apprehended. Defendant had the $1000, but no weapon.
 
 
 4
 On December 12, 1990, a grand jury indicted defendant on one count of bank robbery in violation of 18 U.S.C. § 2113(a). On August 13, 1991, defendant pled guilty pursuant to a Rule 11 plea agreement.
 
 
 5
 On December 18, 1991, the district court filed its tentative findings as to sentencing in which it set the guideline range as fifty-one to sixty-three months and notified defendant of its intention to assess a two level increase to the base offense level under United States Sentencing Guideline (U.S.S.G.) § 2B3.1(b)(2)(F) for defendant's express threat to "blow away" the teller.
 
 
 6
 The defendant objected to the addition of two points for an express threat of death and filed a motion for a non-guideline sentence based upon his mental and emotional condition, his alcoholism and his diminished capacity. The motion was denied by the district court.
 
 
 7
 On January 28, 1992, the district court sentenced defendant to the lower end of the guideline range, fifty-one months imprisonment, followed by a three-year term of supervised release. On February 4, 1992, defendant filed a timely notice of appeal.
 
 II.
 
 8
 We must first determine whether the district court erred in assessing a two-point increase to defendant's sentence under U.S.S.G. § 2B3.1(b)(2)(F) for his threat to "blow away" the bank teller.
 
 
 9
 Defendant objects to the addition of two points to his base offense level for an express threat of death pursuant to U.S.S.G. § 2B3.1(b)(2)(F). Defendant argues that the bank teller advised the U.S. probation officer that in spite of defendant's threatening words, the teller did not believe that defendant really had a weapon because of the way he was acting, but decided to give him the money anyway because she did not want to take any chances. Defendant contends that the purpose of U.S.S.G. § 2B3.1(b)(2)(F) is to provide an increase when a threat of death instills a significantly greater fear than necessary to constitute an element of the offense of robbery. Defendant argues that because the teller did not believe defendant had a weapon and plexiglass protected her from him, the teller did not feel that her life was threatened by defendant and, therefore, he did not engender greater fear than necessary to constitute an element of the offense of robbery.
 
 
 10
 Guideline § 2B3.1(b)(2)(F) states that the base offense level for robbery shall be increased by two levels if an express threat of death was made during the commission of the offense.
 
 Application note seven states:
 
 11
 An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.
 
 
 12
 Federal Sentencing Guidelines Manual, p. 57 (1992).
 
 
 13
 Contrary to defendant's argument, the standard called for in application note seven is not the subjective state of mind of the victim, but the objective viewpoint of a reasonable person, i.e., whether "the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery." Cf. United States v. Medved, 905 F.2d 935, 940 (6th Cir.1990) (toy gun comes within purview of use of a dangerous weapon statute where defendant's conduct results in a greater risk of harm), cert. denied, 111 S.Ct. 997 (1991).
 
 
 14
 In the present case, the district court applied this objective test in reaching its factual findings, stating:
 
 
 15
 The Court is satisfied that it is the focus of the guideline to be concerned about the acts engaged in by the defendant, and the actual effect on the victim is only incidental. If, for example, a given defendant through words or gestures does his best to intimidate, threaten and otherwise carry on such activity directed at a victim who unbeknown to him is a black belt in some sort of Kung Fu, [and] therefore, doesn't feel in the least intimidated, that's no less serious behavior on the part of the defendant. And it's the behavior of the defendant that the Guidelines seek to sanction, to recognize and to accurately construct a sentence for.
 
 
 16
 The district court then concluded that defendant's threat to blow the teller away constituted the type of a threat that warranted a two-level increase under U.S.S.G. § 2B.1(b)(2)(F).
 
 
 17
 We may not reverse this factual finding of the district court unless it is clearly erroneous. United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 18
 In the present case, defendant does not dispute the description of defendant's conduct contained in the presentence report:
 
 
 19
 At this point, MR. BENNETT became angry. He grabbed his left lapel and put his right hand into his pocket advising the teller that he had a gun and if she moved he was going to blow her away. He then asked her for $1,000.
 
 
 20
 Presentence report at para. 12, p. 4. The report continued that although the teller did not believe that defendant had a gun, "[s]he felt that if the plexiglass had not been there MR. BENNETT would have physically harmed her" and "she was not going to take any chances." Id. at para. 17, p. 4.
 
 
 21
 We do not find the district court's conclusion that defendant uttered intimidating words conveying a threat of death to be clearly erroneous. The examples of express threats of death listed in application note seven to Guideline § 2B3.1(b)(2)(F) are remarkably similar to the threat made in the present case: "Give me the money or I will kill you," "Give me the money or I will pull the pin on the grenade I have in my pocket," "Give me the money or I will shoot you," "Give me your money or else (where the defendant draws his hand across his head in a slashing motion)," and "Give me the money or you are dead." For these reasons, the district court did not err in assessing a two-level increase for a threat of death pursuant to Guideline § 2B3.1.
 
 III.
 
 22
 We must next decide whether the district court erred in denying defendant's motion for a non-guideline sentence due to his alleged mental and emotional condition, alcoholism and diminished capacity.
 
 
 23
 Defendant argues that the district court should have declined to apply the Sentencing Guidelines because the Guidelines do not adequately account for his alleged mental and emotional condition, alcoholism and diminished capacity.
 
 
 24
 Defendant relies solely on United States v. Davern, 937 F.2d 1041 (6th Cir.1991), but this opinion has been vacated. In Davern, this court had held that a court was not required to follow the Guidelines when the parties present a legitimate aggravating or mitigating circumstance not adequately taken into consideration by the Guidelines. In United States v. Davern, 970 F.2d 1490 (6th Cir.1992), the en banc court of the Sixth Circuit overruled this statement and held that the Guidelines are a sentencing imperative and that a departure is justified only as stated in 18 U.S.C. § 3553(b). Id. at 1492-93. Section 3553(b) states that in determining whether a circumstance was adequately taken into consideration, the court shall consider the Sentencing Guidelines, its policy statements, and the official commentary of the Sentencing Commission. Specific Guideline sections expressly provide that the conditions upon which defendant relies are ordinarily not relevant for consideration of a sentence outside the Guideline range. U.S.S.G. §§ 5H1.3, 5H1.4, and 5K2.13. For these reasons, the district court did not err in denying defendant's motion for a sentence outside the Guideline range.
 
 
 25
 To conclude, the judgment of the district court is hereby AFFIRMED.